UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA CAROLE GRAY, | ) | CASE NO. 4:11-CV-1462 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE MCHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | REPORT & RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Linda Gray's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below the undersigned recommends that the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION & PROCEDURAL HISTORY

On August 15, 2008, Plaintiff Linda Gray ("Plaintiff" or "Gray") protectively applied for Supplemental Security Income benefits alleging that she became disabled on July 1, 2005, due to suffering from poor vision, anxiety attacks, chronic obstructive pulmonary disease ("COPD") and diverticulosis. (Tr. 111-13, 123, 127). Gray's application was denied initially and on reconsideration. (Tr. 41-42). Thereafter, she requested a hearing before an administrative law judge to contest the denial of her application. (Tr. 64-66). The Social Security Administration granted Plaintiff's request and scheduled a hearing. (Tr. 69-70, 79-84).

On June 22, 2010, Administrative Law Judge David Hatfield (the "ALJ") convened a hearing in Seven Hills, Pennsylvania to hear Plaintiff's case.  (Tr. 6-40).  Plaintiff appeared at the hearing with counsel and testified.  (*Id*.)  Vocational expert, Mr. George Sturasco (the "VE") also appeared and testified.  (*Id*.)  On July 22, 2010, the ALJ issued his decision and determined that Gray was not disabled.  (Tr. 46-53).  In the written decision, the ALJ applied the five-step sequential analysis,[1] and determined that Gray retained the ability to perform work which existed in significant numbers in the national economy and thus, was not disabled.  (*Id*.)

Following this ruling, Gray sought review of the ALJ's decision from the Appeals Council.  (Tr. 107-09).  But, the Appeals Council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-5).  Gray now seeks judicial

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

review of the Commissioner's final ruling. Judicial review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Gray, born on February 16, 1957, was 51 years old on the date she applied for benefits. (Tr. 41, 52). Thus, at all relevant times, she was considered as a "person closely approaching advanced age" for Social Security purposes. 20 C.F.R. § 416.963(d). Plaintiff completed high school and attended vocational schooling for data entry. (Tr. 12). Although Gray has no "past relevant work" as defined by 20 C.F.R. § 416.965, she has some experience working as a dog breeder, bartender and as a construction worker. (Tr. 12-14, 33).

## II. RELEVANT MEDICAL EVIDENCE

In May 2008, Plaintiff was examined by Dr. Digvijay Singh, a pulmonologist, who opined that she suffered from mild obstructive lung disease. Treatment records show that Gray also took Albuterol and used a nebulizer once a day. (Tr. 226).

In December 2008, state agency physician, Dr. Paul Morton, reviewed Plaintiff's medical record and opined that she retained the physical ability to perform medium work.[2] (Tr. 263). Dr. Morton noted that Plaintiff suffered from diverticulosis, chronic gastritis, and mild diffuse nonspecific colitis. (Tr. 263). He also reported that she complained of occasional wheezes. (*Id*.) Finally, he noted that Plaintiff should avoid all concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas. (Tr. 266). On September 10, 2009, state agency physician, Dr. Kathryn Drew, affirmed Dr. Morton's assessment as written. (Tr. 329).

With regard to Plaintiff's mental impairments, in October 2008, consultative examiner, Dr. Donald Degli, performed a psychological evaluation on Gray. (Tr. 239-42). He found that

---

[2] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

she was markedly impaired in her ability to interact with peers, supervisors, and the public; moderately impaired in her ability to maintain attention, concentration, persistence and pace, and to withstand the stresses and pressures of the workplace; and mildly impaired in her ability to follow directions or perform routine tasks. (Tr. 242). Overall, from a psychological standpoint, Dr. Degli opined that Gray was moderately impaired in her ability to participate in competitive employment.

One month later, Dr. David Demuth, a state agency psychologist, reviewed Gray's medical record and opined that Plaintiff would be able to "work in an environment that offer[ed] little opportunity for stress, no fast pace, and no strict quota." (Tr. 247). Dr. Demuth adopted all of Dr. Degli's findings, save one. He concluded that Plaintiff was only moderately, not markedly, limited in social interaction.[3] In April 2009, state agency psychologist, Dr. Catherine Flynn, affirmed Dr. Demuth's findings as written. (Tr. 270).

### III. VOCATIONAL EXPERT TESTIMONY

Both the ALJ and Gray's attorney posed a series of hypothetical questions to the VE. The first question posed by the ALJ described a hypothetical individual with the following RFC:

> [S]omeone . . . limited to medium work as that's defined in the regulation except the person could be around no concentrated exposure to dust, fumes, odors and chemicals. In addition, there would be little stress required in the job and that's defined in this hypothetical as little decision making required and limited to routine tasks. The work would not be production rate based but would rather be goal oriented in nature. There'd be no interaction with the public and occasional interaction with co-workers.

---

[3] Dr. Demuth also noted that Plaintiff's "schedule and concentration [we]re mod[erately] reduced." (Tr. 274). This statement is somewhat ambiguous as it is not clear what the doctor intended by stating that Gray would have a moderately reduced schedule. The doctor did not offer any other commentary to explain the meaning of this finding. Nevertheless, because he explicitly stated that he was adopting all of Dr. Degli's findings, save that regarding Gray's ability to interact socially, the undersigned presumes that the Dr. Demuth intended for this finding to be consistent with Dr. Degli's conclusions.

(Tr. 32-33). In response, the VE indicated that such an individual would be able to perform work as a kitchen helper, auto detailer or agriculture packer. (Tr. 33).

In the next hypothetical question, the ALJ described a person with the same RFC, except this person was only capable of performing light work[4] rather than medium work. (Tr. 33). The VE identified three jobs that such a person could perform: laundry hand folder, remnant sorter and stocker. (Tr. 33-34). The ALJ then asked the VE to consider whether two additional factors would alter his answer regarding the type of work this hypothetical person could perform. First, the ALJ asked the VE about what impact being absent for four days a month would have on this person's ability to work. The VE indicated that this factor would eliminate all jobs. (Tr. 34). The ALJ then inquired whether the person's need to leave the job site, unscheduled twice a day for a half hour, would impact the person's ability to maintain employment. The VE indicated that this factor would cause job loss. (*Id.*)

Thereafter, Gray's counsel presented a few hypothetical questions to the VE. First, Plaintiff's counsel described a person having the same RFC as presented in the ALJ's initial hypothetical question, except this person also had a moderate limitation in the ability to concentrate, which Gray's counsel defined as causing lapses in concentration for more than 10 minutes each hour. (Tr. 35-36). The VE testified that this restriction would eliminate all jobs. (Tr. 36).

Next, Gray's counsel asked the VE to consider an individual with the same RFC as before, but to modify the person's physical abilities from being able to perform medium work, to only having the capacity to walk 150 feet without the use of a nebulizer due to breathing

---

[4] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . it requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

5

problems. (Tr. 37). After a short discussion between the ALJ, VE, and counsel, the VE opined that the need to use a nebulizer after performing work with even very little exertion, along with being off task for at least five minutes while taking the medication, would "exceed the tolerance of most employers." (Tr. 38).

## IV. ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law. At step one of the five-step sequential analysis, the ALJ found that Gray had not engaged in substantial gainful activity since the date she applied for benefits on August 15, 2008. (Tr. 48). At step two, The ALJ held that Plaintiff suffered from two severe impairments: anxiety and COPD. (*Id*.) However, at step three, the ALJ ruled that neither of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 48-50). Before moving to step four, the ALJ assessed Gray's residual functional capacity ("RFC") to work. (Tr. 50-52). The ALJ determined that Gray retained the RFC to perform a limited range of light work. (Tr. 50). Because Plaintiff did not have any past relevant work experience, it was unnecessary for the ALJ to make a finding a step four. (Tr. 52). But, at the final step in the analysis, The ALJ concluded that Gray was not disabled because she could perform work existing in significant numbers in the national economy, such as that of a laundry hand folder, remnant sorter or stocker. (*Id*.)

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.*  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*.  Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)*.*  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)*.*

## VII. ANALYSIS

Gray has only asserted one objection to the ALJ's decision. She maintains that the ALJ did not properly credit the VE's testimony offered during the hearing. Gray submits that had the ALJ credited the VE's opinions, the ALJ would have concluded that Plaintiff was disabled. The central question therefore is whether the ALJ's treatment of the VE's testimony is supported by substantial evidence.

Under the five-step framework, the claimant bears the burden of satisfying the first four steps of the analysis. *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 440 (6th Cir. 2011). The burden then shifts to the Commissioner at the final stage in the analysis to determine whether there are jobs existing in significant numbers in the national economy which the claimant can perform. *Id*. Accordingly, once it is determined that a claimant cannot perform her past relevant work, the Commissioner must demonstrate that the claimant retains the capacity to perform other work. *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 1990).

"To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Testimony provided by a vocational expert can provide substantial evidence of a claimant's vocational qualifications to perform certain jobs so long as the expert's testimony is given in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, the ALJ need not incorporate the claimant's unsubstantiated complaints into the hypothetical question(s) presented to the VE. *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In this case, the ALJ concluded that Gray retained the ability to perform a limited range of light work. The ALJ indicated that Gray's work should avoid "concentrated exposure to dust,

fumes, odors, an chemicals" and involve no more than little stress, or, in other words "require[e] little decisionmaking and only routine tasks not performed at a production rate pace but rather goal oriented tasks." (Tr. 50). He also stated that Plaintiff's work should entail no more than "occasional interaction with co-workers and no interaction with the public." (*Id*.) Gray has not asserted any direct challenge to the ALJ's description of her RFC.

The ALJ's assessment of Gray's RFC – the same RFC which was used as the basis of the ALJ's second hypothetical question to the VE and upon which he ultimately relied – is supported by the record. The medical opinions offered by Drs. Digvijay Singh, Paul Morton and Kathryn Drew, support the ALJ's ruling that Gray was capable of performing a range of light work. Though Drs. Morton and Drew found that Plaintiff could perform medium work, the ALJ limited Plaintiff to light work due to problems with her pulmonary function. The record also supports the ALJ's finding that Plaintiff retained the mental capacity to perform routine work. None of the psychologists who evaluated Gray's mental condition precluded her from working. Although Dr. Degli noted that Plaintiff was moderately impaired in her ability to work, Drs. Demuth and Flynn opined that Plaintiff could perform routine, low stress tasks. It was appropriate for the ALJ to rely upon the opinions of the state agency psychologists regarding Plaintiff's capacity to work as they are skilled in the area of Social Security. *See* 20 C.F.R. § 416.927(e)(2)(i) (noting that state agency physicians are "highly qualified" and "experts in Social Security disability evaluation"). Thus, the ALJ's RFC is supported by the record.

The second hypothetical question the ALJ posed to the VE described a person having the same RFC as Gray. The VE testified that such an individual would be able to work as a laundry folder, remnant sorter and stocker. These are the same jobs which the ALJ concluded that Gray could perform. Because the ALJ's RFC finding is supported by the record evidence, it was

appropriate for the ALJ to rely upon the VE's testimony in response to this hypothetical question, as it reflected an accurate portrayal of Gray's capabilities. Thus, the ALJ's reliance upon this testimony was proper. *See Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 568 (6th Cir. 2009) ("We therefore hold that the ALJ based his RFC calculation upon substantial evidence. Because the ALJ's hypothetical question to the vocational expert also relied upon the same conclusions as those used to calculate the RFC, we also find that it was not error for the ALJ to rely upon the expert's answers to the hypothetical questions in denying Mitchell's benefits claim.").

Nevertheless, Gray suggests that the ALJ should have credited the VE's testimony indicating that there would be no work for an individual who would: 1) miss roughly four days of work each month; 2) have lapses of concentration for more than 10 minutes an hour; and 3) require the use of a nebulizer for performing tasks which required only minimal exertional effort. However, as Defendant noted, Plaintiff failed to identify any objective evidence demonstrating that these limitations were medically necessary.

Aside from Plaintiff's testimony offered at the hearing, the undersigned can find no other evidence to legitimize these claimed limitations. The undersigned cannot see where any physician opined that Plaintiff's conditions would require her to be absent from work for several days each month. While Dr. Demuth commented that Plaintiff's schedule would be moderately reduced, Plaintiff has not presented any evidence demonstrating that this finding equated to her missing four days of work each month.

Neither did the Court's review uncover any objective evidence to bolster Gray's claim that her problems with concentration would cause her to be off task for more than 10 minutes each hour. Undoubtedly, the record shows that Gray suffered from a moderate limitation in this

area. However, this finding does not demonstrate that she would be off task for more than 10 minutes each hour. Instead, despite finding that Gray had a moderate limitation in this area of mental functioning, the state agency psychologists concluded that she was still able to perform static, routine tasks. Additionally, as highlighted by the Commissioner, in a self-completed form, Gray admitted that she could pay attention all day when she watched television, an admission which also undercuts her current claims.

Lastly, the ALJ openly questioned Gray's claim that she began wheezing when performing *any* level of physical activity. The ALJ noted that despite this assertion, Gray has continued to smoke against her doctor's advice to stop, and that both she and her roommate have smoked in her house. Accordingly, the evidence of record does not necessitate these additional limitations.

It is apparent that the ALJ did not find these limitations to be credible because he omitted them from his RFC finding. While some of the VE's responses to other of the hypothetical questions support Plaintiff's request for benefits, the ALJ was not required to credit this testimony because it was offered in response to questions incorporating unsubstantiated claims regarding the extent of Plaintiff's limitations. As previously noted, there is no objective evidence to support any additional restrictions on Gray's ability to concentrate, maintain attendance, or perform tasks requiring minimal exertion. Therefore, the ALJ properly excluded these limitations from the hypothetical question he presented to the VE, and upon which he ultimately relied in determining that Gray was not disabled. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). As a consequence, it was also proper for the ALJ to disregard the VE's responses to the hypothetical questions referencing these unsupported

11

limitations because there was no support for them in the record. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (finding that the ALJ properly rejected the VE's responses to the hypothetical questions presented by the claimant because these questions included claims that were not "supported by or consistent with the evidence").

## VIII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: May 17, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of the mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).